1  Shaun Setareh (SBN 204514)
     shaun@setarehlaw.com
2  William M. Pao (SBN 219846)
     william@setarehlaw.com
3  Alexandra R. McIntosh (SBN 320904)
     alex@setarehlaw.com
4  SETAREH LAW GROUP
   315 South Beverly Drive, Suite 315
5  Beverly Hills, California 90212
   Telephone (310) 888-7771
6  Facsimile (310) 888-0109

7  Attorneys for Plaintiff
   LEVONE HARRIS

8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11                   OAKLAND DIVISION

12

| | |
|---|---|
| 13  LEVONE HARRIS, on behalf of himself, all others similarly situated, | Case No. 3:19-cv-07801-WHO |
| 14 | **CLASS ACTION** |
| 15          *Plaintiff*, | **FIRST AMENDED COMPLAINT** |
| 16      vs. | 1.  Violation of 15 U.S.C. §§ 1681b(b)(2)(A) (Fair Credit Reporting Act) |
| 17  KM INDUSTRIAL, INC., a Delaware corporation; and DOES 1 through 50, inclusive, | 2.  Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512 and 1198); |
| 18 | 3.  Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7 and 1198); |
| 19          *Defendants*. | 4.  Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1 and 1198); |
| 20 | 5.  Failure to Indemnify (Lab. Code § 2802); |
| 21 | 6.  Failure to Provide Accurate Written Wage Statements (Lab. Code §§ 226(a)); |
| 22 | 7.  Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203); |
| 23 | 8.  Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq.*); |
| 24 | 9.  Civil Penalties (Lab. Code §§ 2698 *et seq.*); |
| 25 | **JURY TRIAL DEMANDED** |

26

27

28

COMES NOW, Plaintiff LEVONE HARRIS ("Plaintiff"), on behalf of himself, all others similarly situated, and the general public, complains and alleges as follows:

## INTRODUCTION

1.    Plaintiff brings this class action against Defendant KM INDUSTRIAL INC., a Delaware corporation; and DOES 1 through 50, inclusive (collectively referred to as "Defendants") for alleged violations of the Fair Credit Reporting Act ("FCRA") and similar California laws.

2.    Plaintiff alleges that Defendants routinely acquire consumer, investigative consumer and/or consumer credit reports (referred to collectively as "credit and background reports") to conduct background checks on Plaintiff and other prospective, current and former employees and use information from credit and background reports in connection with their hiring process without providing proper disclosures and obtaining proper authorization in compliance with the law.

3.    Plaintiff, individually and on behalf of all others similarly situated current, former and prospective employees, seeks compensatory and punitive damages due to Defendants' systematic and willful violations of the FCRA (15 U.S.C. §§ 1681 *et seq.*).

4.    Plaintiff brings this class and representative action against Defendants for alleged violations of the Labor Code and Business and Professions Code.  As set forth below, Plaintiff alleges that Defendants have

    (1)    failed to provide him and all other similarly situated individuals with meal periods;

    (2)    failed to provide them with rest periods;

    (3)    failed to pay them premium wages for missed meal and/or rest periods;

    (4)    failed to pay them premium wages for missed meal and/or rest periods at the regular rate of pay;

    (5)    failed to pay them at least minimum wage for all hours worked;

    (6)    failed to reimburse them for all necessary business expenses;

    (7)    failed to provide them with accurate written wage statements; and

    (8)    failed to pay them all of their final wages following separation of employment.

1    Based on these alleged Labor Code violations, Plaintiff now brings this class and

2 representative action to recover unpaid wages, restitution and related relief on behalf of himself, all

3 others similarly situated, and the general public.

4                                    **JURISDICTON AND VENUE**

5    5.    This Court has subject matter jurisdiction to hear this case because the monetary

6 damages and restitution sought by Plaintiff from Defendants conduct exceeds the minimal

7 jurisdiction of the Superior Court of the State of California.

8    6.    Venue is proper in Alameda County because Defendants' principal place of

9 business is in Indiana, is incorporated under the laws of Delaware, does business in Alameda

10 County, and has not registered a California place of business with the California Secretary of State.

11 As such, venue is proper in any county in California.

12                                             **PARTIES**

13   7.    Plaintiff LEVONE HARRIS is, and at all relevant times mentioned herein, an

14 individual residing in the State of California.

15   8.    Plaintiff is informed and believes, and thereupon alleges that Defendant KM

16 INDUSTRIAL, INC. is, and at all relevant times mentioned herein, a Delaware corporation doing

17 business in the State of California.

18   9.    Plaintiff is ignorant of the true names and capacities of the defendants sued herein as

19 DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names.

20 Plaintiff will amend this Complaint to allege the true names and capacities of the DOE defendants

21 when ascertained.  Plaintiff is informed and believes, and thereupon alleges that each of the

22 fictitiously named defendants are responsible in some manner for the occurrences, acts and

23 omissions alleged herein and that Plaintiff's alleged damages were proximately caused by these

24 defendants, and each of them.  Plaintiff will amend this complaint to allege both the true names and

25 capacities of the DOE defendants when ascertained.

26   10.   Plaintiff is informed and believes, and thereupon alleges that, at all relevant times

27 mentioned herein, some or all of the defendants were the representatives, agents, employees,

28 partners, directors, associates, joint venturers, principals or co-participants of some or all of the

1    other defendants, and in doing the things alleged herein, were acting within the course and scope of

2    such relationship and with the full knowledge, consent and ratification by such other defendants.

3       11.    Plaintiff is informed and believes, and thereupon alleges that, at all relevant times

4    mentioned herein, some of the defendants pursued a common course of conduct, acted in concert

5    and conspired with one another, and aided and abetted one another to accomplish the occurrences,

6    acts and omissions alleged herein.

7                                **CLASS ALLEGATIONS**

8       12.    This action has been brought and may be maintained as a class action pursuant to

9    Code of Civil Procedure section 382 because there is a well-defined community of interest among

10   the persons who comprise the readily ascertainable classes defined below and because Plaintiff is

11   unaware of any difficulties likely to be encountered in managing this case as a class action.

12      13.    **Relevant Time Period**:  The relevant time period is defined as the time period

13   beginning four years prior to the filing of this action until judgment is entered.

14   **FCRA Class:**  All of Defendants' current, former and prospective applicants for
     employment in the United States who applied for a job with Defendants at any time during
15   the period for which a background check was performed beginning five years prior to the
     filing of this action and ending on the date that final judgment is entered in this action.
16

17   **Hourly Employee Class**:  All persons employed by Defendant and/or any staffing agencies
     and/or any other third parties in hourly or non-exempt positions in California during the
     **Relevant Time Period**.
18

19          **Meal Period Sub-Class**:  All **Hourly Employee Class** members who worked in a
            shift in excess of five hours during the **Relevant Time Period**.

20          **Rest Period Sub-Class**:  All **Hourly Employee Class** members who worked a shift
            of at least three and one-half (3.5) hours during the **Relevant Time Period**.
21

22          **Wage Statement Penalties Sub-Class**:  All **Hourly Employee Class** members
            employed by Defendants in California during the period beginning one year before
            the filing of this action and ending when final judgment is entered.
23

24          **Waiting Time Penalties Sub-Class**:  All **Hourly Employee Class** members who
            separated from their employment with Defendants during the period beginning three
            years before the filing of this action and ending when final judgment is entered.
25

26          **Expense Reimbursement Sub-Class:**  All persons employed by Defendants in
            California who incurred business expenses during the **Relevant Time Period**.

27   **UCL Class**:  All **Hourly Employee Class** members employed by Defendants in California
     during the **Relevant Time Period**.
28

14.    **Reservation of Rights**:  Pursuant to Rule of Court 3.765(b), Plaintiff reserves the right to amend or modify the class definitions with greater specificity, by further division into sub-classes and/or by limitation to particular issues.

15.    **Numerosity**:  The class members are so numerous that the individual joinder of each individual class member is impractical.  While Plaintiff does not currently know the exact number of class members, Plaintiff is informed and believes, and thereupon alleges that the actual number exceeds the minimum required for numerosity under California law.

16.    **Commonality and Predominance:**  Common questions of law and fact exist as to all class members and predominate over any questions which affect only individual class members. These common questions include, but are not limited to:

A.    Whether Defendants failed to comply with the requirements of 15 U.S.C. § 7001 section 101(c)(1);

B.    Whether Defendants willfully failed to provide the class with stand-alone written disclosures before obtaining a credit or background report in compliance with the statutory mandates;

C.    Whether Defendants willfully failed to identify the name, address, telephone number, and/or website of the investigative consumer reporting agency conducting the investigation;

D.    Whether Defendants willfully failed to identify the source of the credit report to be performed;

E.    Whether Defendants willfully failed to comply with the FCRA;

F.    Whether Defendants maintained a policy or practice of failing to provide employees with their meal periods;

G.    Whether Defendants maintained a policy or practice of failing to provide employees with their rest periods;

H.    Whether Defendants failed to pay premium wages to class members when they have not been provided with required meal and/or rest periods;

I.    Whether Defendants failed to pay minimum and/or overtime wages to class

members as a result of policies that fail to provide meal periods in accordance with California law;

J.      Whether Defendants failed to pay minimum and/or overtime wages to class members for all time worked;

K.      Whether Defendants failed to reimburse class members for all necessary business expenses incurred during the discharge of their duties;

L.      Whether Defendants failed to provide class members with accurate written wage statements as a result of providing them with written wage statements with inaccurate entries for, among other things, amounts of gross and net wages, and total hours worked;

M.      Whether Defendants applied policies or practices that result in late and/or incomplete final wage payments;

N.      Whether Defendants are liable to class members for waiting time penalties under Labor Code section 203;

O.      Whether class members are entitled to restitution of money or property that Defendants may have acquired from them through unfair competition;

17.    **Typicality:**  Plaintiff's claims are typical of the other class members' claims. Plaintiff is informed and believes and thereupon alleges that Defendants have a policy or practice of failing to comply with the Labor Code and Business and Professions Code as alleged in this Complaint.

18.    **Adequacy of Class Representative:**  Plaintiff is an adequate class representative in that he has no interests that are adverse to, or otherwise conflict with, the interests of absent class members and is dedicated to vigorously prosecuting this action on their behalf.  Plaintiff will fairly and adequately represent and protect the interests of the other class members.

19.    **Adequacy of Class Counsel:**  Plaintiff's counsel are adequate class counsel in that they have no known conflicts of interest with Plaintiff or absent class members, are experienced in wage and hour class action litigation, and are dedicated to vigorously prosecuting this action on behalf of Plaintiff and absent class members.

20.    **Superiority:**  A class action is vastly superior to other available means for fair and efficient adjudication of the class members' claims and would be beneficial to the parties and the Court.  Class action treatment will allow a number of similarly situated persons to simultaneously and efficiently prosecute their common claims in a single forum without the unnecessary duplication of effort and expense that numerous individual actions would entail.  In addition, the monetary amounts due to many individual class members are likely to be relatively small and would thus make I difficult, if not impossible, for individual class members to both seek and obtain relief. Moreover, a class action will serve an important public interest by permitting class members to effectively pursue the recovery of monies owed to them.  Further, a class action will prevent the potential for inconsistent or contradictory judgments inherent in individual litigation.

## GENERAL ALLEGATIONS

21.    Plaintiff worked for Defendants as a non-exempt, hourly employee from approximately January 2017 through July 2019.

22.    When Plaintiff applied for employment, Defendants performed a background investigation on Plaintiff.

23.    Defendants did not provide legally compliant disclosure and authorization forms to Plaintiff and the putative class as they contained extraneous and superfluous language and/or not clear and conspicuous. **Exhibit A.** Everything except the following language is extraneous and superfluous, and not clear and conspicuous:

> a.   "I authorize KM Industrial, Inc. to investigate my education and employment history and background and all representations I have made, and I authorize any current or prior employer, school, reference, and other entity or person to disclose to KM Industrial, Inc. any and all information concerning me that they may have, and waive any right to verbal or written notice of such disclosure of information."

### Shortened Meal Periods – Policies and Practices

24.    Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of requiring Plaintiff and the putative class to arrive at

their work stations within the thirty-minutes that was allotted to them. As a result, Plaintiff and the putative class regularly shortened their meal periods to arrive at their workstations within the thirty-minute meal periods allotted to them. If they did not arrive at their workstation within the allotted thirty-minute meal period, fifteen-minutes of time was deducted from their pay.

25.    Accordingly, Plaintiff and the putative class were provided with shortened meal periods due to the time spent returning to their workstations during their meal period so time was not deducted from their pay.

26.    Plaintiff alleges that, at relevant times during the applicable limitations period, Defendants maintained a policy or practice of disciplining Plaintiff and members of the putative class, in the form of deducting their pay, if they did not arrive at their workstations within the thirty-minutes allotted for their meal period.

27.    Plaintiff alleges that, at relevant times during the applicable limitations period, due to Defendants above-mentioned policy or practice, Plaintiff and the putative class did not receive their full thirty (30) minutes uninterrupted meal periods that they were entitled under California law.

**Shortened Meal Periods – Security Checks**

28.    Plaintiff alleges that, at all relevant times during the applicable limitations period, Plaintiff and the putative class had shortened meal periods because of their time spent going through the security checks.

29.    Throughout their employment, when Plaintiff and the putative class left the premises for their meal period, they had to shorten their meal period by fifteen minutes. They shortened their meal period by fifteen-minutes, so they were able to get through security with enough time to arrive at their workstations within the allotted thirty minutes they were provided.

30.    Accordingly, Plaintiff and the putative class were provided with shortened meal periods due to the time spent entering and leaving the premises, undergoing security checks, and the necessity to return to their workstations within the allotted thirty-minutes. If Plaintiff and the putative class did not return within their allotted thirty-minutes, their pay was deducted by fifteen-minutes.

CLASS ACTION COMPLAINT

31.   Plaintiff and the putative class were coerced to shorten their meal periods because of the security searches that took place when entering and leaving the premises. The security checks substantially reduced their meal periods, so Plaintiff and the putative class were not receiving their full meal period.

32.   Plaintiff alleges that, at relevant times during the applicable limitations period, Defendants maintained a policy or practice of disciplining Plaintiff and members of the putative class, in the form of deducting their pay, if they did not arrive at their workstations within the thirty-minutes allotted for their meal period.

33.   Plaintiff alleges that, at relevant times during the applicable limitations period, due to Defendants above-mentioned policy or practice, Plaintiff and the putative class did not receive their full thirty (30) minutes uninterrupted meal periods that they were entitled under California law.

**Off-the-Clock Work - Generally**

34.   Plaintiff and the putative class were not paid all wages earned as Defendants directed, permitted or otherwise encouraged Plaintiff and the putative class to perform off-the-clock work.

35.   Plaintiff and the putative class consistently worked through their meal periods because they had to complete their assigned tasks on time, especially when they were working "hot jobs". These "hot jobs" required Plaintiff and the putative class to work constantly through their work day, leaving little to no time to take a meal period. These "hot jobs" had to be completed within a timely manner.

36.   As a result of performing off-the-clock work that was directed, permitted or otherwise encouraged by Defendants, Plaintiff and the putative class should have been paid for this time.

37.   Defendants knew or should have known that Plaintiff and the putative class were performing work before and after their scheduled work shifts and failed to pay Plaintiff and the putative class for these hours.

38.   Defendants were aware of this practice and directed, permitted or otherwise

1  encouraged Plaintiff and the putative class to perform off-the-clock work.

2      39.    As a result of Defendants' policies and practices, Plaintiff and the putative class were

3  not paid for all hours worked.

4                    **Off-the-Clock Work – Security Checks**

5      40.    Plaintiff and the putative class were subject to searches when they arrived for work.

6  When Plaintiff and the putative class showed up for work, they were stopped at the security

7  checkpoint. During this time, security searched their personal vehicles.

8      41.    Plaintiff and the putative class were required to spend at least two to five minutes in

9  the morning going through the security check – time that was not paid by Defendants.

10     42.    Plaintiff and the putative class were required to go through the security check prior

11 to arriving for their shift.

12     43.    Based on the above, Defendants' security check practices has resulted in substantial

13 amounts of time not recorded as hours worked therefore resulting in substantial amount of wages

14 not paid to Plaintiff and the putative class.

15     44.    As a result of performing off-the-clock work that was directed, permitted or

16 otherwise encouraged by Defendants, Plaintiff and the putative class should have been paid for this

17 time.  Instead, Defendants only paid Plaintiff and the putative class based on the time they were

18 clocked in for their shifts and did not pay Plaintiff and the putative class for any of the time spent

19 working off-the-clock.

20     45.    Defendants knew or should have known that Plaintiff and the putative class were

21 performing work before and after their scheduled work shifts and failed to pay Plaintiff and the

22 putative class for these hours.

23     46.    Defendants were aware of this practice and directed, permitted or otherwise

24 encouraged Plaintiff and the putative class to perform off-the-clock work.

25     47.    As a result of Defendants' policies and practices, Plaintiff and the putative class were

26 not paid for all hours worked.

27                    **Off-the-Clock Work – Auto-Deduct**

28     48.    Plaintiff and the putative class were not paid all wages earned as Defendants

directed, permitted or otherwise encouraged Plaintiff and the putative class to perform off-the-clock work.

49.    Throughout their employment, Plaintiff and the putative class did not track their own time. Defendant's supervisors were tasked with tracking Plaintiff and the putative class' time. Plaintiff and the putative class were not clocking in and out for their meal periods but a meal period was being deducted from their time, regardless if they took a meal period that day or not.

50.    As a result of performing off-the-clock work that was directed, permitted or otherwise encouraged by Defendants, Plaintiff and the putative class should have been paid for this time.

51.    Defendants knew or should have known that Plaintiff and the putative class were performing work before and after their scheduled work shifts and failed to pay Plaintiff and the putative class for these hours.

52.    Defendants were aware of this practice and directed, permitted or otherwise encouraged Plaintiff and the putative class to perform off-the-clock work.

53.    As a result of Defendants' policies and practices, Plaintiff and the putative class were not paid for all hours worked.

**Improper Rounding Practices**

54.    Defendants utilize a rounding practice that is not "fair and neutral" and which results in a failure to pay employees over a period of time.

55.    Plaintiff is informed and believes, and thereupon alleges, that Defendants have not, did not, and do not keep records of actual hours worked by Plaintiff and the putative class.  In the absence of records showing actual hours worked, Plaintiff and the putative class are unable to ascertain whether (1) Defendants' rounding practices comply with California law; (2) whether Defendants' rounding practices resulted over a period of time, in failure to compensate Plaintiff and the putative class properly for all the time they actually worked; and (3) whether Plaintiff and the putative class were properly paid for all hours worked.

56.    Plaintiff and the putative class did not punch in and out using a manual clock, an electronic clock, nor did they track their time utilizing a time sheet. Their supervisors were tasked

with tracking time for Plaintiff and the putative class. They were never aware of how many hours their supervisor calculated for the day. The only way that Plaintiff and the putative class were able to track their hours was when they asked their supervisor for the number of hours they had worked.

### Missed Meal Periods – Interrupted/Shortened

57.    Plaintiff and the putative class members were not provided with meal periods of at least thirty (30) minutes for each five (5) hour work period due to (1) Defendants' policy of not scheduling each meal period as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) no formal written meal and rest period policy that encouraged employees to take their meal and rest periods.

58.    As a result of Defendants' policy, Plaintiff and the putative class were regularly not provided with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hours worked because Plaintiff and the putative class were constantly shortening their meal periods to ensure that they made it back on time from their meal periods.

59.    Additionally, during "hot jobs," Plaintiff and the putative class were constantly working through their meal periods. At some points, they were supplied with food to eat for their meal period. Still, Plaintiff and the putative class were unable to take their full meal periods because they had to return to work to complete their daily tasks on time.

60.    Also, if the refinery that Plaintiff and the putative class were working at had called for an emergency, then no one was able to leave. If Plaintiff and the putative class were just about to go on their meal period, they were unable to do so because they were not allowed to leave the premises to take their meal period.

### Missed Meal Periods - Auto-Deduct

61.    During their employment with Defendants, Plaintiff and the putative class were also given jobs at refineries that did not allow for them to clock in or out of their shift. Instead, their supervisor kept track of their time and submit it for them. This often resulted in an auto-deduct of their time for meal periods, regardless if Plaintiff and the putative class took their meal period that

1    day or not.

2        62.    Plaintiffs and the putative class members were not provided with meal periods of at

3    least thirty (30) minutes for each five (5) hour work period due to (1) Defendants' policy of not

4    scheduling each meal period as part of each work shift; (2) chronically understaffing each work

5    shift with not enough workers; (3) imposing so much work on each employee such that it made it

6    unlikely that an employee would be able to take their breaks if they wanted to finish their work on

7    time; and (4) no formal written meal and rest period policy that encouraged employees to take their

8    meal and rest periods.

9        63.    As a result of Defendants' policy, Plaintiffs and the putative class were regularly not

10   provided with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hours

11   worked because their supervisors were the only ones tracking their times during these shifts and

12   submitting Plaintiff and the putative class' time for them.

13                                   **Missed Rest Periods**

14       64.    Plaintiff and the putative class members were not provided with rest periods of at

15   least ten (10) minutes for each four (4) hour work period, or major fraction thereof, due to (1)

16   Defendants' policy of not scheduling each rest period as part of each work shift; (2) chronically

17   understaffing each work shift with not enough workers; (3) imposing so much work on each

18   employee such that it made it unlikely that an employee would be able to take their breaks if they

19   wanted to finish their work on time; (4) no formal written meal and rest period policy that

20   encouraged employees to take their meal and rest periods; and (5) having security checks shortened

21   their rest breaks.

22       65.    As a result of Defendants' policy, Plaintiff and the putative class were regularly not

23   provided with uninterrupted rest periods of at least ten (10) minutes for each four (4) hours worked

24   because Plaintiff and the putative class were constantly working through their rest periods to

25   complete their daily tasks on time.

26       66.    More so, if Plaintiff and the putative class were suited up to clean the tankers, they

27   were unable to take their rest periods because by the time they took off all of their gear, their rest

28   break was over and they had to put it all back on to return to work. As a result, Plaintiff and the

putative class resorted to staying in their uniforms and sitting within the tank when it was time for their rest break.

**Expense Reimbursement**

67.     Plaintiff and the putative class members were required to utilize their own personal cell phones to perform their job duties. Plaintiff and the putative class were required to use their own personal cell phones to connect with their supervisor on certain jobs or call in an emergency situation.

68.     Plaintiff and the putative class members were never given the opportunity to be provided with a walkie for work as that right was reserved for upper management.

69.     Defendants failed to reimburse Plaintiff and the putative class for such necessary business expenses incurred by them.

**Wage Statements**

70.     Plaintiff and the putative class were not provided with accurate wage statements as mandated by law pursuant to Labor Code section 226.

71.     Defendants failed to comply with Labor Code section 226(a)(1) as "gross wages earned" were not accurately reflected in that: (1) all hours worked, including overtime, were not included; (2) all meal period premiums were not included; (3) all rest period premiums were not included, and; (4) all reimbursements were not included.

72.     Defendants failed to comply with Labor Code section 226(a)(2) as "total hours worked by the employee" were not accurately reflected in that: (1) all hours worked, including overtime, were not included; (2) all meal period premiums were not included; (3) all rest period premiums were not included, and; (4) all reimbursements were not included.

73.     Defendants failed to comply with Labor Code section 226(a)(5) as "net wages earned" were not accurately reflected in that: (1) all hours worked, including overtime, were not included; (2) all meal period premiums were not included; (3) all rest period premiums were not included, and; (4) all reimbursements were not included.

74.     Defendants failed to comply with Labor Code section 226(a)(9) as "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each

hourly rate by the employee" were not accurately reflected in that: all hours worked, including overtime, were not included.

## FIRST CAUSE OF ACTION

### FAILURE TO PROVIDE PROPER DISCLOSURE IN VIOLATION OF THE FCRA

### (15 U.S.C. §§ 1681b(b)(2)(A))

### (Plaintiff and FCRA Class Against All Defendants)

75.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully alleged herein.

76.    Defendants are "persons" as defined by Section 1681a(b) of the FCRA.

77.    Plaintiff and class members are "consumers" within the meaning of Section 1681a(c) of the FCRA because they are "individuals."

78.    Section 1681a(d)(1) of the FCRA defines "consumer report" as:

"The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for–

(A)  credit or insurance to be used primarily for personal, family, or household purposes;

(B)  employment purposes; or

(C)  any other purpose authorized under section 1681b of this title."

Accordingly, a credit and background report qualifies as a consumer report.

79.    Section 1681a(e) of the FCRA defines "investigative consumer report" as:

"The term 'investigative consumer report' means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items off information.  However, such information shall not include specific factual information on a consumer's credit record obtained directly from a creditor of the consumer or from a consumer reporting agency when such information was obtained directly from a creditor of the consumer or from the consumer."

Accordingly, a credit and background report qualifies as an investigative consumer report.

80.    Section 1681b(b)(2)(A) of the FCRA provides:

Conditions for furnishing and using consumer reports for employment purposes
Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless–

    (i)   A *clear and conspicuous* disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that *consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

    (ii)  The consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person. (Emphasis added.)

81.    Section 1681b(b)(2)(A)(i) requires that a clear and conspicuous disclosure be made in writing.

82.    Because Defendants' disclosures do not meet the requirement of 15 U.S.C. section 7001(c), the disclosures do not satisfy the written requirement.

83.    Plaintiff alleges, upon information and belief, that in evaluating him and other class members for employment, Defendants procured or caused to be procured credit and background reports (i.e. a consumer report and/or investigative consumer report as defined by 15 U.S.C. section 1681a(d)(1)(B) and 15 U.S.C. section 1681a(e)).

84.    The purported disclosures do not meet the requirements under the law because they are embedded with extraneous information, and are not clear and unambiguous disclosures in stand-alone documents.

85.    Under the FCRA, it is unlawful to procure or caused to be procured, a consumer report or investigative consumer report for employment purposes unless the disclosure is made in a document that consists solely of the disclosure and the consumer has authorized, in writing, the procurement of the report. (15 U.S.C. § 1681b(b)(2)(A)(i)-(ii).) The inclusion of a release and other extraneous information therefore violates section 1681b(b)(2)(A) of the FCRA.

86.    Although the disclosure and authorization may be combined in a single document, the Federal Trade Commission ("FTC") has warned that the form should not include any extraneous information or be part of another document. For example, in response to an inquiry as to whether the disclosure may be set forth within an application for employment or whether it must be included in a separate document, the FTC stated:

"The disclosure may not be part of an employment application because the language [of 15 U.S.C. section 1681b(b)(2)(A) is] intended to ensure that it appears conspicuously in a document not encumbered by any other information.  The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side within the disclosure."

87.    The plain language of the statute also clearly indicates that the inclusion of a liability release in a disclosure form violates the disclosure and authorization requirements of the FCRA, because such a form would not consist "solely" of the disclosure.  In fact, the FTC expressly warned that the FCRA notice may not include extraneous information such as a release.  In a 1998 opinion letter, the FTC stated:

"[W]e note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA.  The inclusion of such a waiver in a disclosure form will violate section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist 'solely' of the disclosure that a consumer report may be obtained for employment purposes."

88.    In a report dated July 2011, the FTC reiterated that "the notice [under 15 U.S.C. section 1681b(b)(2)(A)] may not include extraneous or contradictory information, such as a request for a consumer's waiver of his or her rights under the FCRA."

89.    By including a release and other extraneous information, Defendants willfully disregarded the FTC's regulatory guidance and violated section 1681b(b)(2)(A) of the FCRA. Additionally, the inclusion of the extraneous provisions causes the disclosure to fail to be "clear and conspicuous" and "clear and accurate" and therefore violates sections 1681b(b)(2)(A0 and 1681d(a).

90.    Defendants' conduct in violation of section 1681b(b)(2)(A) of the FCRA was and is willful.  Defendants acts in deliberate or reckless disregard of their obligations and the rights of applicants and employees, including Plaintiff and class members.  Defendants' willful conduct is reflected by, among other things, the following facts:

A.    Defendants are a large corporation with access to legal advice;

B.    Defendants required a purported authorization to perform credit and background checks in the process of employing the class members which, although defective, evidences Defendants' awareness of and willful failure to

follow the governing laws concerning such authorizations;

C.   The plain language of the statute unambiguously indicates that inclusion of a liability release and other extraneous information in a disclosure form violates the disclosure and authorization requirements; and

D.   The FTC's express statements, pre-dating Defendants' conduct, which state that it is a violation of section 1681b(b)(2)(A) of the FCRA to include a liability waiver in the disclosure form.

91.    Defendants required a liability release in the disclosure form, along with other extraneous information, that releases all parties involved from any liability and responsibility for releasing information they have about the Plaintiff to Defendants.

92.    Based upon the facts likely to have evidentiary support after a reasonable opportunity to further investigation and discovery, Plaintiff alleges that Defendants have a policy and practice of procuring investigative consumer reports or causing investigative consumer reports to be procured for applicants and employees without informing them of their right to request a summary of their rights under the FCRA at the same time as the disclosure explaining that an investigative consumer report may be made.  Pursuant to that policy and practice, Defendants procured investigative consumer reports or caused investigative consumer reports to be procured for Plaintiff and class members, as described above, without informing class members of their rights to request a written summary of their rights under the FCRA.

93.    Accordingly, Defendants willfully violated and continue to violate the FCRA, including but not limited to, sections 1681b(b)(2)(A) and 1681d(a).  Defendants' willful conduct is reflected by, among other things, the facts set forth above.

94.    As a result of Defendants' unlawful procurement of credit and background reports by way of their inadequate disclosures, as set forth above, Plaintiff and class members have been injured, including but not limited to, having their privacy and statutory rights invaded in violation of the FCRA.

95.    Plaintiff, on behalf of himself and all class members, seek all available remedies pursuant to 15 U.S.C. section 1681n, including statutory damages and/or actual damages, punitive

1    damages, injunctive and equitable relief and attorneys' fees and costs.

2        96.    In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff

3    alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C.

4    section 1681o, including statutory damages and attorneys' fees and costs.

5                         **SECOND CAUSE OF ACTION**

6                    **FAILURE TO PROVIDE MEAL PERIODS**

7                   **(Lab. Code §§ 204, 223, 226.7, 512 and 1198)**

8                  **(Plaintiff and Meal Period Sub-Class)**

9        97.    Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if

10   fully alleged herein.

11       98.    At all relevant times, Plaintiff and the **Meal Period Sub-Class** members have been

12   non-exempt employees of Defendant entitled to the full meal period protections of both the Labor

13   Code and the applicable Industrial Welfare Commission Wage Order.

14       99.    Labor Code section 512 and Section 11 of the applicable Industrial Welfare

15   Commission Wage Order impose an affirmative obligation on employers to provide non-exempt

16   employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period

17   of five hours, and to provide them with two uninterrupted, duty-free meal periods of at least thirty

18   minutes for each work period of ten hours.

19       100.   Labor Code section 226.7 and Section 11 of the applicable Industrial Welfare

20   Commission Wage Order ("Wage Order") both prohibit employers from requiring employees to

21   work during required meal periods and require employers to pay non-exempt employees an hour of

22   premium wages on each workday that the employee is not provided with the required meal period.

23       101.   Compensation for missed meal periods constitutes wages within the meaning of

24   Labor Code section 200.

25       102.   Labor Code section 1198 makes it unlawful to employ a person under conditions that

26   violate the applicable Wage Order.

27       103.   Section 11 of the applicable Wage Order states:

28             "No employer shall employ any person for a work period of more than five (5) hours

without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time."

104.    At all relevant times, Plaintiff was not subject to a valid on-duty meal period agreement. Plaintiff is informed and believes that, at all relevant times, **Meal Period Sub-Class** members were not subject to valid on-duty meal period agreements with Defendants.

105.    Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing Plaintiff and members of the **Meal Period Sub-Class** with uninterrupted, duty-free meal periods for at least thirty (30) minutes for each five (5) hour work period, as required by Labor Code section 512 ad the applicable Wage Order.

106.    Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of automatically deducting one-half hour for a meal period from the paychecks of **Meal Period Sub-Class** members on each day they worked, regardless of whether or not they were able to take an uninterrupted, duty-free meal period.

107.    Moreover, Defendants written policies do not provide that employees must take their first meal period before the end of the fifth hour of work, that they are entitled to a second meal period if they work a shift of over ten hours, or that the second meal period must commence before the end of the tenth hour of work, unless waived.

108.    At all relevant times, Defendants failed to pay Plaintiff and the **Meal Period Sub-Class** members additional premium wages, and/or were not paid premium wages at the employees' regular rates of pay when required meal periods were not provided.

109.    Pursuant to Labor Code section 204, 218.6 and 226.7, Plaintiff, on behalf of himself and the **Meal Period Sub-Class** members who were not provided with a complaint meal period and were not paid premium wages; and therefore, seek to recover unpaid premium wages, interest thereon, and costs of suit.

110.    Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and the **Meal Period Sub-Class** members, seek to recover reasonable attorneys' fees.

### THIRD CAUSE OF ACTION

**FAILURE TO PROVIDE REST PERIODS**

**(Lab. Code §§ 204, 223, 226.7 and 1198)**

**(Plaintiff and Rest Period Sub-Class)**

111.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

112.    At all relevant times, Plaintiff and the **Rest Period Sub-Class** members have been non-exempt employees of Defendants entitled to the full rest period protections of both the Labor Code and the applicable Wage Order.

113.    Section 12 of the applicable Wage Order imposes an affirmative obligation on employers to permit and authorize employees to take required rest periods at a rate of no less than ten minutes of net rest time for each four hour work period, or major fraction thereof, that must be in the middle of each work period insofar as practicable.

114.    Labor Code section 226.7 and Section 12 of the applicable Wage Order both prohibit employers from requiring employees to work during required rest periods and require employers to pay non-exempt employees an hour of premium wages at the employees' regular rates of pay, on each workday that the employee is not provided with the required rest period(s).

115.    Compensation for missed rest periods constitutes wages within the meaning of Labor Code section 200.

116.    Labor Code section 1198 makes it unlawful to employ a person under conditions that violate the Wage Order.

117.    Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing members of the **Rest Period Sub-Class** with net rest period of at least ten minutes for each four hour work period, or major fraction thereof, as required by the applicable Wage Order.

118.    At all relevant times, Defendants failed to pay Plaintiff and the **Rest Period Sub-Class** members additional premium wages when required rest periods were not provided.

119.    Specifically, Defendants written policies do not provide that employees may take a rest period for each four hours worked, or major fraction thereof, and that rest periods should be taken in the middle of each work period insofar as practicable.

120.    Pursuant to Labor Code section 204, 218.6 and 226.7, Plaintiff, on behalf of himself and **Rest Period Sub-Class** members who were not provided with a compliant rest period and were not paid premium wages; and therefore, seek to recover unpaid premium wages, interest thereon, and costs of suit.

121.    Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **Rest Period Sub-Class** members, seek to recover reasonable attorneys' fees.

<u>**FOURTH CAUSE OF ACTION**</u>

**FAILURE TO PAY HOURLY AND OVERTIME WAGES**

**(Lab. Code §§ 223, 510, 1194, 1197 and 1198)**

**(Plaintiff and Hourly Employee Class)**

122.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

123.    At all relevant times, Plaintiff and **Hourly Employee Class** members are or have been non-exempt employees of Defendants entitled to the full protections of the Labor Code and the applicable Wage Order.

124.    Section 2 of the applicable Wage Order defines "hours worked" as "the time during which an employee is subject to the control of the employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

125.    Section 4 of the applicable Wage Order requires an employer to pay non-exempt employees at least the minimum wage set forth therein for all hours worked, which consist of all hours that an employer has actual or constructive knowledge that employees are working.

126.    Labor Code section 1194 invalidates any agreement between an employer and an

employee to work for less than the minimum or overtime wage required under the applicable Wage Order.

127.   Labor Code section 1194.2 entitles non-exempt employees to recover liquidated damages in amounts equal to the amounts of unpaid minimum wages and interest thereon in addition to the underlying unpaid minimum wages and interest thereon.

128.   Labor Code section 1197 makes it unlawful for an employer to pay an employee less than the minimum wage required under the applicable Wage Order for all hours worked during a payroll period.

129.   Labor Code section 1197.1 provides that it is unlawful for any employer or any other person acting either individually or as an officer, agent or employee of another person, to pay an employee, or cause an employee to be paid, less than the applicable minimum wage.

130.   Labor Code section 1198 makes it unlawful for employers to employ employees under conditions that violate the applicable Wage Order.

131.   Labor Code section 204 requires employers to pay non-exempt employees their earned wages for the normal work period at least twice during each calendar month on days the employer designates in advance and to pay non-exempt employees their earned wages for labor performed in excess of the normal work period by no later than the next regular payday.

132.   Labor Code section 223 makes it unlawful for employers to pay their employees lower wages than required by contract or statute while purporting to pay them legal wages.

133.   Labor Code section 510 and Section 3 of the applicable Wage Order require employees to pay non-exempt employees overtime wages of no less than one and one-half times their respective regular rates of pay for all hours worked in excess of eight hours in one workday, all hours worked in excess of forty hours in one workweek, and/or for the first eight hours worked on the seventh consecutive day of one workweek.

134.   Labor Code section 510 and Section 3 of the applicable Wage Order also require employers to pay non-exempt employees overtime wages of no less than two times their respective regular rates of pay for all hours worked in excess of twelve hours in one workday and for all hours worked in excess of eight hours on a seventh consecutive workday during the workweek.

135.    Plaintiff is informed and believes that, at all relevant times, Defendants have applied centrally devised policies and practices to him and **Hourly Employee Class** members with respect to working conditions and compensation arrangements.

136.    At all relevant times, Defendants failed to pay hourly wages to Plaintiff and **Hourly Employee Class** members for all time worked, including but not limited to, overtime hours at statutory and/or agreed rates.

137.    Plaintiff on behalf of himself and **Hourly Employee Class** members, who were not paid all hourly wages, seek to recover unpaid wages, interest thereon, and costs of suit.

138.    At all relevant times during the applicable limitations period, Defendants maintained a policy or practice of automatically deducting one-half hour from Plaintiff's timecard on every workday for a meal period, regardless of whether or not Plaintiff was provided with a meal period.

139.    Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of automatically deducting one-half hour from **Hourly Employee Class** members' timecard on every workday for a meal period, regardless of whether or not **Hourly Employee Class** members were provided with a meal period.

140.    As a result of Defendants' policy or practice of automatically deducting one-half hour from employees' timecards for every workday for a meal period, Plaintiff and **Hourly Employee Class** members were required to perform off-the-clock work that Defendants either knew or should have known they were working.

141.    At all relevant times, Defendants failed to pay hourly wages to Plaintiff for all time worked, including but not limited to, overtime wages at statutory and/or agreed rates by suffering or permitting him to work during unpaid meal periods and/or failing to properly pay Plaintiff for all overtime hours worked.

142.    Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not paying hourly wages to **Hourly Employee Class** members for all time worked, including but not limited to, overtime hours at statutory and/or agreed rates by suffering or permitting them to work during unpaid meal periods.

143.    During the relevant time period, Defendants failed to pay Plaintiff and **Hourly**

**Employee Class** members all earned wages every pay period at the correct rates, including overtime rates, because Defendants directed, permitted or otherwise encouraged Plaintiff and **Hourly Employee Class** members to perform off-the-clock work.

144.    As a result of Defendants' unlawful conduct, Plaintiff and **Hourly Employee Class** members have suffered damages in an amount, subject to proof, to the extent they were not paid the full amount of wages earned during each pay period during the applicable limitations period, including overtime wages.

145.    Pursuant to Labor Code sections 204, 218.6, 223, 510, 1194 and 1194.2, Plaintiff, on behalf of himself and **Hourly Employee Class** members, seek to recover unpaid straight time and overtime wages, interest thereon and costs of suit.

146.    Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **Hourly Employee Class** members, seek to recover reasonable attorneys' fees.

<u>**FIFTH CAUSE OF ACTION**</u>

**FAILURE TO INDEMNIFY**

**(Lab. Code § 2802)**

**(Plaintiff and Expense Reimbursement Class)**

147.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

148.    Labor Code section 2802(a) states:

"An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

149.    At all relevant times during the applicable limitations period, Plaintiff and the **Expense Reimbursement Class** members incurred necessary business related expenses and costs, including but not limited to, use of their personal cell phone.

150.    Plaintiff is informed and believes, and thereupon alleges that the reimbursement paid by Defendants was insufficient to indemnify Plaintiff and **Expense Reimbursement Class**

1   members who were not fully reimbursed for all necessary business expenses incurred in the

2   discharge of their duties.

3        151.    Plaintiff is informed and believes and thereupon alleges that the reimbursement paid

4   by Defendants was insufficient to indemnify **Expense Reimbursement Class** members who were

5   not fully reimbursed for all necessary business expenses incurred in the discharge of their duties.

6        152.    Plaintiff is informed and believes that, during the applicable limitations period,

7   Defendants maintained a policy or practice of not reimbursing Plaintiff and **Expense**

8   **Reimbursement Class** members for all necessary business expenses.

9        153.    Accordingly, Plaintiff and **Expense Reimbursement Class** members who were not

10  fully reimbursed for all business expenses are entitled to restitution for all unpaid amounts due and

11  owing to within four years of the date of the filing of the Complaint and until the date of entry of

12  judgment.

13       154.    Plaintiff, on behalf of himself, and **Expense Reimbursement Class** members who

14  were not fully reimbursed for all business expenses, seek interest thereon and costs pursuant to

15  Labor Code section 218.6, and reasonable attorneys' fees pursuant to Code of Civil Procedure

16  section 1021.5.

17  **<u>SIXTH CAUSE OF ACTION</u>**

18  **FAILURE TO PROVIDE ACCURATE WRITTEN WAGE STATEMENTS**

19  **(Lab. Code § 226)**

20  **(Plaintiff and Wage Statement Penalties Sub-Class)**

21       155.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged

22  herein.

23       156.    Labor Code section 226(a) states:

24      "An employer, semimonthly or at the time of each payment of wages, shall furnish to
    his or her employee, either as a detachable part of the check, draft, or voucher paying

25  the employee's wages, or separately if wages are paid by personal check or cash, an
    accurate itemized statement in writing showing (1) gross wages earned, (2) total

26  hours worked by the employee, except as provided in subdivision (j), (3) the number
    of piece-rate units earned and any applicable piece rate if the employee is paid on a

27  piece-rate basis, (4) all deductions, provided that all deductions made on written
    orders of the employee may be aggregated and shown as one item, (5) net wages

28  earned, (6) the inclusive dates of the period for which the employee is paid, (7) the

name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment.  The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.  For purposes of this subdivision, 'copy' includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision."

157.    The Division of Labor Standards Enforcement ("DLSE") has sought to harmonize the "detachable part of the check" provision and the "accurate itemized statement in writing" provision of Labor Code section 226(a) by allowing for electronic wage statements so long as each employee retains the right to elect to receive a written paper stub or record and that those who are provided with electronic wage statements retain the ability to easily access the information and convert the electronic statements into hard copies at no expense to the employee. (DLSE Opinion Letter July 6, 2006).

158.    Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants have failed to provide **Wage Statement Penalties Sub-Class** members with written wage statements as described above.

159.    Plaintiff is informed and believes that Defendants' failure to provide him and **Wage Statement Penalties Sub-Class** members with accurate written wage statements were intentional in that Defendants have the ability to provide them with accurate wage statements but have intentionally provided them with written wage statements that Defendants have known do not comply with Labor Code section 226(a).

160.    Plaintiff and **Wage Statement Penalties Sub-Class** members have suffered injuries, in that Defendants have violated their legal rights to receive accurate wage statements and have misled them about their actual rates of pay and wages earned.  In addition, inaccurate information on their wage statements have prevented immediate challenges to Defendants' unlawful pay

1  practices, has required discovery and mathematical computations to determine the amount of wages

2  owed, has caused difficulty and expense in attempting to reconstruct time and pay records, and/or

3  has led to the submission of inaccurate information about wages and deductions to federal and state

4  government agencies.

5       161.    Pursuant to Labor Code section 226(e), Plaintiff, on behalf of himself and **Wage**

6  **Statement Penalties Sub-Class** members who were not provided a complaint accurate written

7  wage statement, seek the greater of actual damages or $50.00 for the initial pay period in which a

8  violation of Labor Code section 226(a) occurred, and $100.00 for each subsequent pay period in

9  which a violation of Labor Code section 226(a) occurred, not to exceed an aggregate penalty of

10  $4000.00 per class member, as well as awards of reasonable attorneys' fees and costs.

11  **SEVENTH CAUSE OF ACTION**

12  **FAILURE TO TIMELY PAY ALL FINAL WAGES**

13  **(Lab. Code §§ 201-203)**

14  **(Plaintiff and Waiting Time Penalties Sub-Class)**

15       162.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged

16  herein.

17       163.    At all relevant times, Plaintiff and **Waiting Time Penalties Sub-Class** members

18  have been entitled, upon the end of their employment with Defendants, to timely payment of all

19  wages earned and unpaid before termination or resignation.

20       164.    At all relevant times, pursuant to Labor Code section 201, employees who have been

21  discharged have been entitled to payment of all final wages immediately upon termination.

22       165.    At all relevant times, pursuant to Labor Code section 202, employees who have

23  resigned after giving at least seventy-two (72) hours notice of resignation have been entitled to

24  payment of all final wages at the time of resignation.

25       166.    At all relevant times, pursuant to Labor Code section 202, employees who have

26  resigned after giving less than seventy-two (72) hours notice of resignation have been entitled to

27  payment of all final wages within seventy-two (72) hours of giving notice of resignation.

28       167.    During the applicable limitations period, Defendants failed to pay Plaintiff all of his

final wages in accordance with the Labor Code by failing to timely pay him all of his final wages.

168.   Plaintiff is informed and believes that, at all relevant time during the applicable limitations period, Defendants have failed to timely pay certain **Waiting Time Penalties Sub-Class** members all of their final wages in accordance with the Labor Code.

169.   Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants have maintained a policy or practice of paying certain **Waiting Time Penalties Sub-Class** members their final wages without regard to the requirements of Labor Code sections 201 or 202 by failing to timely pay them all final wages.

170.   Plaintiff is informed and believes and thereupon alleges that Defendants' failure to timely pay all final wages to him and certain **Waiting Time Penalties Sub-Class** members have been willful in that Defendants have the ability to pay final wages in accordance with Labor Code sections 201 and/or 202 but have intentionally adopted policies or practices that are incompatible with those requirements.

171.   Pursuant to Labor Code sections 203 and 218.6, Plaintiff, on behalf of himself and certain **Waiting Time Penalties Sub-Class** members, seek waiting time penalties from the dates that their final wages have first become due until paid, up to a maximum of thirty days, and interest thereon.

172.   Pursuant to Code of Civil Procedure section 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff, on behalf of himself and **Waiting Time Penalties Sub-Class** members, seek awards of reasonable attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION

### UNFAIR COMPETITION

### (Bus. & Prof. Code §§ 17200 *et seq*.)

### (Plaintiff and UCL Class)

173.   Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

174.   Business and Professions Code section 17200 defines "unfair competition" to include any unlawful business practice.

175.    Business and Professions Code section 17203-17204 allow a person who has lost money or property as a result of unfair competition to bring a class action in accordance with Code of Civil Procedure section 382 to recover money or property that may have been acquired from similarly situated persons by means of unfair competition.

176.    California law requires employers to pay hourly, non-exempt employees for all hours they are permitted or suffered to work, including hours that the employer knows or reasonable should know that employees have worked.

177.    Plaintiff and the **UCL Class** members re-alleges and incorporates the SECOND, THIRD, FOURTH and FIFTH causes of action herein.

178.    Plaintiff lost money or property as a result of the aforementioned unfair competition.

179.    Defendants have or may have acquired money by means of unfair competition.

180.    Plaintiff is informed and believes and thereupon alleges that by committing the Labor Code violations described in this Complaint, Defendants violated Labor Code sections 215, 216, 225, 226.6, 354, 408, 553, 1175, 1199 and 2802, which make it a misdemeanor to commit the Labor Code violations alleged herein.

181.    Defendants have committed criminal conduct through their policies and practices of, *inter alia*, failing to comport with their affirmative obligations as an employer to provide non-exempt employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five or more hours, by failing to provide non-exempt employees with uninterrupted, duty-free rest periods of at least ten minutes for each work period of four hours, by failing to pay non-exempt employees for all hours worked, by failing to reimburse them for all expenses, and all other allegations contained herein.

182.    At all relevant times, Plaintiff and **UCL Class** members have been non-exempt employees and entitled to the full protections of both the Labor Code and the applicable Wage Order.

183.    Defendants' unlawful conduct as alleged in this Complaint amounts to and constitutes unfair competition within the meaning of Business and Professions Code section 17200 *et seq.* Business and Professions Code sections 17200 *et seq.* protects against unfair competition

1  and allows a person who has suffered an injury-in-fact and has lost money or property as a result of

2  an unfair, unlawful or fraudulent business practice to seek restitution on his own behalf and on

3  behalf of similarly situated persons in a class action proceeding.

4  184.    As a result of Defendants' violations of the Labor Code during the applicable

5  limitations period, Plaintiff has suffered an injury-in-fact and has lost money or property in the form

6  of earned wages.  Specifically, Plaintiff has lost money or property as a result of Defendants'

7  conduct.

8  185.    Plaintiff is informed and believes that other similarly situated persons have been

9  subject to the same unlawful policies or practices of Defendants.

10  186.    Due to the unfair and unlawful business practices in violation of the Labor Code,

11  Defendants have gained a competitive advantage over other comparable companies doing business

12  in the State of California that comply with their legal obligations.

13  187.    California's Unfair Competition Law ("UCL") permits civil recovery and injunctive

14  for "any unlawful, unfair or fraudulent business act or practice," including if a practice or act

15  violates or is considered unlawful under any other state or federal law.

16  188.    Accordingly, pursuant to Bus. & Prof. Code sections 17200 and 17203, Plaintiffs

17  request the issuance of temporary, preliminary and permanent injunctive relief enjoining

18  Defendants, and each of them, and their agents and employees, from further violations of the Labor

19  Code and applicable Industrial Welfare Commission Wage Orders; and upon a final hearing seek

20  an order permanently enjoining Defendants, and each of them, and their respective agents and

21  employees, from further violations of the Labor Code and applicable Industrial Welfare

22  Commission Wage Orders.

23  189.    Pursuant to Business and Professions Code section 17203, Plaintiff, on behalf of

24  himself and **UCL Class** members, seek declaratory relief and restitution of all monies rightfully

25  belonging to them that Defendants did not pay them or otherwise retained by means of its unlawful

26  and unfair business practices.

27  190.    Pursuant to Code of Civil Procedure section 1021.5, the substantial benefit doctrine

28  and/or the common fund doctrine, Plaintiff and **UCL Class** members are entitled to recover

reasonable attorneys' fees in connection with their unfair competition claims.

191.     Pursuant to Business and Professions Code section 17203, Plaintiff, on behalf of himself and **UCL Class** members, seek declaratory relief and restitution of all monies rightfully belonging to them that Defendants did not pay them or otherwise retained by means of its unlawful and unfair business practices.

192.     Pursuant to Code of Civil Procedure section 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff and **UCL Class** members are entitled to recover reasonable attorneys' fees in connection with their unfair competition claims.

## NINTH CAUSE OF ACTION

### CIVIL PENALTIES

### (Lab. Code §§ 2698 *et seq.*)

193.     Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

194.     During the applicable limitations period, Defendants have violated Labor Code sections 201, 202, 203, 204, 223, 226(a), 226.7, 510, 512, 1194, 1197, 1198 and 2802.

195.     Labor Code sections 2699(a) and (g) authorize an aggrieved employee, on behalf of herself and other current and former employees, to bring a representative civil action to recover civil penalties pursuant to the procedures set forth in Labor Code section 2699.3 that may, but need not, be brought or maintained as a class action pursuant to Code of Civil Procedure section 382.

196.     Plaintiff, a former employee against who Defendants committed one or more of the alleged Labor Code violations during the applicable limitations period, is an aggrieved employee within the meaning of Labor Code section 2699(c).

197.     Plaintiff has complied with the procedures for bringing suit specified in Labor Code section 2699.3.

198.     Pursuant to Labor Code sections 2699(a) and (f), Plaintiff seeks the following civil penalties for Defendants' violations of Labor Code sections 201, 202, 203, 204, 223, 226(a), 226.7, 510, 512, 1194, 1197, 1198 and 2802:

A.     For violations of Labor Code sections 201, 202, 203, 212, 226.7, 1194, 1198

and 2802, $100 for each employee per pay period for each initial violation and $200 for each employee per pay period for each subsequent violation (penalties set by Labor Code section 2699(f)(2));

B.    For violations of Labor Code section 203, a penalty in an amount not exceeding thirty days pay as waiting time (penalties set by Labor Code section 256);

C.    For violations of Labor Code section 204, $100 for each employee for each initial violation that was neither willful nor intentional, $200 for each employee, plus 25% of the amount unlawfully withheld from each employee, for each initial violation that was either willful or intentional, and $200 for each employee, plus 25% of the amount unlawfully withheld from each employee, for each subsequent violation, regardless of whether the subsequent violation was either willful or intentional (penalties set by Labor Code section 210);

D.    For violations of Labor Code section 223, $100 for each employee for each initial violation that was neither willful nor intentional, $200 for each employee, plus 25% of the amount unlawfully withheld from each employee, for each initial violation that was either willful or intentional, and $200 for each employee, plus 25% of the amount unlawfully withheld from each employee, for each subsequent violation, regardless of whether the subsequent violation was either willful or intentional (penalties set by Labor Code section 225.5);

E.    For violations of Labor Code section 226(a), if this action is deemed to be an initial citation, $250 for each employee for each violation.  Alternatively, if an initial citation or its equivalent occurred before the filing of this action, $1,000 for each employee for each violation (penalties set by Labor Code section 226.3);

F.    For violation of Labor Code sections 510 and 512, $50 for each employee for

each initial pay period for which the employee was underpaid, and $100 for each employee for each subsequent pay period for which the employee was underpaid (penalties set by Labor Code section 558);

G.   For violations of Labor Code section 1197, $100 for each aggrieved employee for each initial violation of Labor Code section 1197 that was intentional, and $250 for each aggrieved employee per pay period for each subsequent violation of Labor Code section 1197, regardless of whether the initial violation was intentional (penalties set by Labor Code section 1197.1);

H.   Pursuant to Labor Code section 2699(g), Plaintiff seeks award of reasonable attorneys' fees and costs in connection with her claims for civil penalties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for relief and judgment against Defendants as follows:

(1)   An order that the action be certified as a class action;

(2)   An order that Plaintiff be appointed class representative;

(3)   An order that counsel for Plaintiff be appointed class counsel;

(4)   Unpaid wages;

(5)   Actual damages;

(6)   Liquidated damages;

(7)   Restitution;

(8)   Declaratory relief;

(9)   Pre-judgment interest;

(10)   Statutory penalties;

(11)   Civil penalties;

(12)   Costs of suit;

(13)   Reasonable attorneys' fees; and

(14)   Such other relief as the Court deems just and proper.

///

1

**DEMAND FOR JURY TRIAL**

2  Plaintiff, on behalf of himself, all other similarly situated, and the general public, hereby

3 demands a jury trial on all issues so triable.

4

5 DATED:  December 11, 2019    SETAREH LAW GROUP

6

7

8                   _____

9                 SHAUN SETAREH
                 WILLIAM M. PAO

10               ALEXANDRA R. MCINTOSH
                Attorneys for Plaintiff

11               LEVONE HARRIS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28