UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVONE HARRIS,<br><br>   Plaintiff,<br><br>  v.<br><br>KM INDUSTRIAL, INC.,<br><br>   Defendant. | Case No. 19-cv-07801-WHO<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 26 |

At issue is whether plaintiff Levone Harris has alleged in excess of $5 million in controversy such that this case is properly in federal court pursuant to the Class Action Fairness Act ("CAFA"). Harris moves to remand this case to state court. He alleges that defendant KM Industrial, Inc. ("KMI") violated California law by failing to provide compliant meal and rest breaks, overtime pay, wage statements, and timely final wages, and that it committed procedural violations of the Fair Credit Reporting Act ("FCRA"). The parties dispute whether the amount-in-controversy requirement under CAFA is satisfied. KMI had the burden to establish the amount-in-controversy, but because its damages calculations rely upon unsupported assumptions that all hourly employees in the proposed class worked shifts that would give rise to both meal and rest break requirements under state law, it failed to establish the amount-in-controversy by a preponderance of the evidence. I GRANT Harris's motion to remand.

## BACKGROUND

Harris was employed by KMI as a non-exempt, hourly employee from January 2017 until July 2019. Dkt. No. 1-1, Ex. A ("Compl.") ¶ 21. He alleges violations of the FCRA, California Labor Code, and California unfair competition law.

First, Harris alleges that "Defendants maintained a policy or practice of requiring Plaintiff and the putative class to arrive at their work stations within the thirty-minutes [for meal periods]

that was allotted to them," and as a result "regularly" shortened meal periods. *Id.* ¶ 24. In addition, due to security searches that took place whenever one entered or left the premises, class members "had to shorten their meal period by fifteen minutes" whenever they left the premises for lunch. *Id.* ¶¶ 29-31. "Hot jobs" also "consistently" caused class members to work through meal periods. *Id.* ¶ 35. KMI imposed a policy whereby a meal period was automatically deducted from employees' time regardless of whether they took that meal period or not. *Id.* ¶ 49.

Harris alleges that "the putative class members were not provided with rest periods of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof." *Id.* ¶ 64. This was due to KMI's policy of not scheduling each rest period as part of each work shift, chronic understaffing and overworking employees, lack of formal written meal and rest period policy, and security checks. *Id.* In addition, if class members "were suited up to clean the tankers, they were unable to take their rest periods because by the time they took off all of their gear, their rest break was over and they had to put it all back on to return to work." *Id.* ¶ 66. Finally, Harris alleges that KMI failed to provide accurate wage statements because all hours worked, including overtime, meal and rest period premiums, and reimbursements, were not included. *Id.* ¶¶ 70-74.

Harris filed this action in Alameda Superior Court on October 24, 2019. Dkt. No. 1-1 ¶ 2. On November 27, 2019 KMI filed a notice of removal to the Norther District of California. Dkt. No. 1. In support of its notice of removal, KMI submitted the declaration of Julian Lopez, the Corporate Human Resources Director of KMI's parent company. Dkt. No. 1-2 ("Lopez Decl.") ¶ 1. Lopez stated that KMI employed approximately 442 putative class members (understood as non-exempt, non-union employees in California) during the relevant time period, who worked an aggregate of 39,834 weeks. *Id.* ¶¶ 6-7. 252 employees worked as non-exempt employees for an aggregate of 10,552 weeks. *Id.* ¶ 9. The median pay rate for all 442 employees is $20.00 per hour, which is lower than the average pay rate. *Id.* ¶ 7. 237 employees were terminated during the relevant time period. *Id.* ¶ 8. Lopez based this information of KMI's computer system, which tracks personnel and payroll information for employees. *Id.* ¶ 4.

## LEGAL STANDARD

A defendant may remove a class action from state to federal court by filing a notice of

removal that lays out the grounds for removal. 28 U.S.C. § 1453(b); 28 U.S.C. § 1446(a). The district court must remand the case to state court if it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). For federal jurisdiction under CAFA, the amount in controversy must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2)(A). The amount in controversy in the litigation can include "damages, costs of compliance with injunctions, attorneys' fees awarded under contract or fee shifting statutes ... [and] future attorneys' fees recoverable by statute or contract." *Fritsch v. Swift Transportation Co. of Arizona*, LLC, 899 F.3d 785, 794 (9th Cir. 2018).

The Ninth Circuit applies "the longstanding rule that the party seeking federal jurisdiction on removal bears the burden of establishing that jurisdiction." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 686 (9th Cir. 2006). When the plaintiff challenges the amount-in-controversy allegations in a notice of removal, parties should submit proof so that the court can determine whether the jurisdictional amount has been shown by a preponderance of the evidence. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553-54 (2014); *see Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (noting that after the amount in controversy has been challenged, the parties may submit affidavits, declarations, or other summary-judgment-type evidence to the court). If the complaint does not include an amount in controversy, the defendant has the burden to "persuade the court that [its] estimate of damages in controversy is a reasonable one." *Ibarra*, 775 F.3d at 1197. The plaintiff's motion to remand will not be successful if it merely challenges the defendant's assumptions without asserting an alternative. *Id.* at 1199.

## DISCUSSION

Harris argues that KMI inflated the damages calculation by relying on several unsupported assumptions: (i) that every class member missed one meal period per week; (ii) that every class member missed two rest periods per week; (iii) that every class member was not paid one hour of overtime every week; (iv) that every class member was provided with a non-compliant wage statement for each pay period during the class period and that each employee was entitled to the maximum statutory penalty; and (iv) that every class member that was separated from

employment was not provided with all final wages and that the maximum 30-day violation period would apply. Dkt. No. 26 at 7. He contends that KMI improperly considered possible damages to the entire class and not for each discrete subclass (e.g., meal period sub-class, rest period sub-class, wage statement penalties sub-class, waiting time penalties sub-class, and expense reimbursement sub-class), and that KMI did not examine whether each potential class member worked an adequate shift, how many days each worked per week, or whether he took any time off. *Id.* at 3-4; 8-9. He also challenges KMI's use of median and not average rate of pay, and its use of a "vaguely described computer system." *Id.* at 8.

Many of Harris's criticisms of KMI's calculations are unpersuasive. With respect to the meal and rest period violations, the complaint alleges that meal and rest violations occurred in part because of security searches that always occurred, that meal periods were automatically deducted from employee time regardless of whether they were in fact taken, that employees did not track their own time, and that KMI did not schedule rest periods as part of each work shift. Moreover, Harris alleges that class members that cleaned tankers were not paid for the time to take their gear on and off, effectively creating a violation whenever this task was performed. These allegations are specific and sufficiently pervasive to support a 20% violation rate that KMI has calculated here. *See Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019), ("Courts in this Circuit, including in this District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods"); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 911 (N.D. Cal. 2016) ("assumption that each putative class member missed one meal break and one rest period per workweek is reasonable"); *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (same); *Garcia v. Praxair, Inc.*, No. 3:18-CV-03887-WHO, 2018 WL 4471151, at *3 (N.D. Cal. Sept. 18, 2018) (calculations based on minimum two missed meal periods and two missed rest periods per week reasonable). Similarly, based upon the allegations regarding meal and rest break violations, KMI's assumption of one hour of overtime per term of employment and its assumptions regarding waiting periods is

reasonable. *Garcia*, 2018 WL 4471151, at *3; *Garza*, 178 F. Supp. 3d at 912.

        However, as Harris points out, KMI did not consider the amounts of time worked by each employee per week such that he would qualify for a rest break and/or a meal break. Dkt. No. 29 at 2, 6. It assumes that the 442 potential class members regularly, or at least more often than not, worked over 3.5 or 8 hours in order to calculate the potential meal and rest break violations (and consequently, overtime and waiting time). But no evidence supports that assumption. As I have previously found, "[t]his matters because [KMI's] potential damages calculations rely on these assumptions. For instance, the meal and rest break calculations are premised on the assumption that the employees worked shifts long enough to entitle them to such breaks." *Miller v. A-1 Express Delivery Servs., Inc.*, No. 16-CV-06251-WHO, 2017 WL 462406, at *4 (N.D. Cal. Feb. 3, 2017); *see also Mohammed v. Am. Airlines, Inc.*, No. 5:19-CV-01540-EJD, 2019 WL 5887105, at *4 (N.D. Cal. Nov. 12, 2019) (granting motion to remand where "Defendant has not presented any evidence of how many non-exempt employees actually worked shifts in excess of five hours such that they would be entitled to a meal period" or "how many non-exempt employees worked shifts in excess of 3.5 hours such that they would be entitled to a rest break"); *Rutledge v. Healthport Techs.*, LLC, No. 16-CV-06920-VC, 2017 WL 728375, at *1 (N.D. Cal. Feb. 24, 2017) (granting motion to remand where defendants' "declaration did not include any information relevant to the potential violation rates for the claims in the complaint, such as the frequency of shifts of different lengths"); *Nolan v. Kayo Oil Co.*, No. C 11-00707 MEJ, 2011 WL 2650973, at *4 (N.D. Cal. July 6, 2011) ("Defendant's use of its entire hourly workforce in its calculations ignores the subclass breakdown which narrows the number of potential plaintiffs who may be awarded penalties and thus inflates Defendant's estimates of the amount in controversy for each of the claims asserted"). As in *Miller*, KMI did not provide any evidence, either in support of its motion to remove or in opposing the motion to remand, regarding the 442 potential class members' shifts or the number of employees that worked full time. The complaint does not provide any allegations regarding Harris's or any other putative class members' shifts.

        KMI largely does not address this problem but instead states that its calculation is based on the theory of averages; if some class members did not suffer any violations, others suffered more

than the estimate. Dkt. No. 28 at 10. This argument would be persuasive if there was some indication of how many putative class members worked shifts that would entitle them to a meal or rest break, but there is none. For that reason, the case upon which KMI relies is distinguishable. *See Danielsson v. Blood Centers of Pac.*, No. 19-CV-04592-JCS, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) (estimate included amount of hours worked per shift). With the current record, there is no evidence to that effect, many of KMI's non-exempt employees could have worked 3.5 hour shifts and not be entitled to any breaks, and KMI's calculation would be grossly exaggerated.

It is not up to me to fill in KMI's blanks. I find that KMI has failed to show that its meal or rest break calculations (or its other calculations that are premised upon these violations) are reasonable. Because I cannot credit these calculations, KMI has failed to show that Harris's claimed damages exceed $5 million by a preponderance of the evidence.[1]

## CONCLUSION

For the above reasons, Harris's motion to remand is GRANTED and the case is remanded to the Superior Court of California, County of Alameda.

**IT IS SO ORDERED.**

Dated: April 24, 2020

William H. Orrick
United States District Judge

---

[1] KMI concedes that a procedural violation of the FCRA does not give rise to federal jurisdiction. Dkt. No. 28 at 4.